# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Armes,<br><br>            Plaintiff,<br><br>v.<br><br>Hot Pizzas, LLC,<br><br>            Defendant. | Case No. CV-16-01152- PHX-JJT<br><br>**ORDER** |

At issue is the Joint Motion of the Parties for Approval of Settlement (Doc. 90).

## BACKGROUND

Plaintiff, a pizza delivery driver, commenced this Fair Labor Standards Act ("FLSA") action on behalf of himself and other similarly situated persons, alleging, *inter alia*, that Defendant Hot Pizzas' reimbursements to him and other delivery drivers for the expense they incurred using their personal vehicles to deliver Hot Pizzas' products to customers were insufficient, causing their "net" wage to fall below the federal minimum. Under the FLSA, employees are permitted to bring actions collectively. 29 U.S.C. § 216(b). Courts in this Circuit follow the two-step approach to FLSA collective action certification. *See Kesley v. Ent. U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014). At the first step, the plaintiff need only demonstrate the existence of a company-wide policy or procedure that arguably affects a group of similarly situated employees. *Id.* If conditional certification is granted, the plaintiff is then entitled to provide notice of the action, in a form approved by the Court, to potential collective action class members. *Id.* Unlike unnamed class members in Rule 23 class actions, potential collective action class

members who wish to participate in the suit must affirmatively "opt-in" to the action by filing a notice of consent to participate. *Id.*; *O'Neal v. Am.'s Best Tire LLC*, CV-16-00056-PHX-DGC, 2016 WL 3087296, at *4 (D. Ariz. June 2, 2016). At the second step, formal certification, the Court will look more closely at whether a collective action is the most appropriate method to proceed with the case. *Kesley*, 67 F. Supp. 3d at 1065.

Here, however, Hot Pizzas stipulated to conditional certification of the collective action in exchange for Plaintiff's dismissal of his state-law Rule 23 claims. The parties also negotiated the terms of a form of notice to be mailed to potentially eligible collective action class members. The parties filed a joint motion stipulating to conditional certification of the collective action and dismissal of the Arizona state law claims, and asked the Court to approve the parties' proposed form of notice to all putative Opt-In Plaintiffs. (Doc. 31) The Court granted the motion on August 1, 2016. (Doc. 34) Hot Pizzas thereafter provided names, addresses, and dates of employment for the potentially eligible collective action class members and Plaintiff's counsel mailed the notice to all current and former delivery drivers who worked for Hot Pizzas at any time within the preceding three years. Pursuant to the Court-approved form of notice, eligible collective action class members were allowed up to 75 days to opt-in to the action.

A total of 239 individuals, including the Named Plaintiff, filed consents to join this lawsuit. (*See generally*, Docket) The parties thereafter exchanged a substantial amount of discovery, including payroll, delivery and reimbursement records for each Opt-In Plaintiff. On April 25, 2017, the parties mediated with retired U.S. Magistrate Judge Arthur Boylan and reached the settlement that is now before the Court.

## **LEGAL ANALYSIS**

This Court has jurisdiction over Plaintiffs' FLSA collective action claims. 29 U.S.C. §216(b). In order to effectuate a binding release on a collective basis, FLSA settlements require judicial or U.S. Department of Labor approval. *Seminiano v. Xyris Enter., Inc.*, 602 Fed. Appx. 682, 683 (9th Cir. 2015) (citing, with approval, *Nall v. Mal– Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013); *Lynn's Food Stores, Inc. v. U.S.*, 679

F.2d 1350, 1352-54 (11th Cir. 1982)); *Baker v. D.A.R.A. II, Inc.*, CV062887PHXLOA, 2008 WL 4368913, at *2 (D. Ariz. Sept. 24, 2008) (citing *Lynn's Food*, 679 F.2d at 1354); *see also Gamble v. Boyd Gaming Corp.*, 213CV01009JCMPAL, 2017 WL 721244, at *4 (D. Nev. Feb. 23, 2017) (noting that courts in the Ninth Circuit look to *Lynn's Food* to determine whether to approve an FLSA settlement). "Under *Lynn's Food*, settlement of FLSA claims may be allowed by 'a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Gamble*, 2017 WL 721244, at *4 (quoting *Lynn's Foods*, 679 F.2d at 1355); *see also Hand v. Dionex Corp.*, CV 06-1318-PHX-JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov. 13, 2007) ("The Court may approve the settlement if it reflects a 'reasonable compromise over issues.'" (quoting *Lynn's Foods*, 679 F.2d at 1354)); *Baker*, 2008 WL 4368913, at *2.[1] For the reasons explained below, this Court concludes that the parties' settlement constitutes a reasonable resolution of a bona fide dispute.

## I. THERE WAS A BONA FIDE DISPUTE

Courts typically rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indicia of fairness. *See Lynn's Food Stores*, 679 F.2d at 1354. A settlement addresses a bona fide dispute when it "reflect[s] a reasonable compromise over issues . . . that are actually in dispute." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1355); *see also Hand*, 2007 WL 3383601, at *1 (same); *Villarreal v. Caremark LLC*, CV-14-00652-PHX-DJH, 2016 WL 5938705, at *2 (D. Ariz. May 10, 2016) (same). Here, Plaintiffs presented allegations

---

[1] Unlike Rule 23 settlements, settlements of FLSA collective actions may be approved in a one-step process, and no final fairness hearing is required. *See* Gamble, 2016 WL 3693743, at *4 n.4 (citing *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 n.1 (2013)). The Court's single obligation—to ensure that the settlement is "fair"—can be contrasted with the Court's obligation to oversee traditional class settlements under Rule 23, which requires, among other things, a hearing on the fairness, reasonableness, and adequacy of the settlement, and an opportunity for class members to object to the settlement. These obligations, which are outlined in Federal Rule 23(e), do not apply to settlements of FLSA collective actions. *See id*.

1  that under-reimbursed automobile expenses caused minimum wage violations. On the
2  other hand, Hot Pizzas asserted that Plaintiffs were reasonably reimbursed for vehicle
3  costs and were compensated at or above the applicable minimum wage. Hot Pizzas denied
4  all of Plaintiffs' substantive allegations and asserted numerous affirmative defenses to
5  liability and damages. If Plaintiffs' allegations proved correct, Hot Pizzas could have
6  faced a sizable monetary judgment, which could include liquidated damages, as well as
7  the obligation to pay Plaintiffs' legal fees and costs. If Hot Pizzas' defenses proved
8  correct, the Plaintiffs would obtain no recovery whatsoever. These facts clearly
9  demonstrate the existence of a bona fide dispute.

10  **II.     THE SETTLEMENT IS FAIR AND REASONABLE**

11       The settlement is the product of arm's-length negotiations by experienced counsel,
12  facilitated by a highly experienced federal Magistrate Judge and Mediator. It provides
13  meaningful monetary relief to the Plaintiffs and eliminates the inherent risks each side
14  would bear if this complex litigation continued to resolution by a jury. Under these
15  circumstances, a presumption of fairness attaches to the settlement. *See Gamble*, 2016 WL
16  3693743, at *5 (D. Nev. July 11, 2016) (reasoning that an arms-length settlement after
17  hours of negotiations with a third-party neutral is "highly indicative of fairness" (quoting
18  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007)); *Lynn's*
19  *Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA
20  case resulting in settlement as indicia of fairness). The settlement creates a Settlement
21  Amount (fund) that will be paid to the Named Plaintiff and Opt-In Plaintiffs. Distributions
22  from the Settlement Fund will be allocated to Opt-In Plaintiffs based on an equitable
23  formula considering the total number of deliveries each of them performed and the
24  amounts previously reimbursed by Hot Pizzas. The amount of the Settlement Fund falls
25  well between the maximum amount Plaintiffs might have recovered if they prevailed on
26  every claim, and nothing, the amount they would have recovered if Hot Pizzas prevailed
27  instead. It represents a fair and reasonable compromise.

28

To determine whether settlement terms are fair and equitable to all parties, courts consider a multitude of factors, including: (1) the stage of the litigation and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the plaintiffs' success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case. *See Fontes v. Drywood Plus, Inc.*, CV-13-1901-PHX-LOA, 2013 WL 6228652, at *6 (D. Ariz. Dec. 2, 2013); *Selk v. Pioneers Meml. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016) (collecting cases).

### A.   Factor 1: The Stage of the Litigation and the Amount of Discovery Exchanged

As noted above, the parties consented to conditional certification, which allowed the collective action class members to be identified. Once the Opt-In Plaintiffs were identified, discovery provided ample information about each collective action class member's deliveries, reimbursements, and wages. This allowed for review and analysis of hundreds of thousands of deliveries and reimbursements for the 239 Opt-In Plaintiffs. Counsel for each side relied on their extensive experience litigating similar cases, and also consulted with experts in the fleet management and vehicle expense reimbursement field to properly evaluate the case. Thus, the parties possessed sufficient information to reach an informed, fair, and reasonable settlement.

### B.   Factor 2: The Experience of Counsel

Both sides were represented by experienced wage and hour counsel. Plaintiffs' counsel have represented employees in FLSA, and particularly, in delivery driver reimbursement cases, in dozens of cases around the nation. Likewise, Hot Pizzas' counsel has defended numerous FLSA actions, including pizza delivery driver cases, including several in Minnesota, Texas, Florida, and Arizona. The Court concludes that the parties were represented by experienced counsel.

**C.     Factor 3: The Probability of the Plaintiffs' Success on the Merits**

This case involves complex issues of fact and law. While courts have resolved some of the legal issues over the years, counsel are unaware of a similar pizza delivery driver case being submitted to a jury. Further, the ultimate fact question—what constitutes a "reasonable" reimbursement—would have been the subject of competing expert testimony. The jury's determination of that question would decide liability and damages. The amount of damages, if any, could vary greatly depending on the reasonable reimbursement rate determined by the jury. Further, if the litigation were to continue, Plaintiffs would have likely faced a motion to decertify the collective action and a dispositive motion. And, if Plaintiffs survived those challenges, they would still face the uncertainty inherent in a jury trial. Thus, success on the merits was far from assured, and this factor strongly supports approval of the settlement.

**D.     Factor 4: Any Overreaching by the Employer in the Settlement Negotiations**

Given retired Magistrate Judge Boylan's significant experience, as well as Plaintiffs' counsel's extensive experience, it is unlikely that Hot Pizzas could have over-reached in the negotiations. Further, the releases provided by the Opt-In Plaintiffs are appropriately limited to only those wage and hour claims that were or could have been brought in the litigation, and only those Opt-In Plaintiffs who accept their settlement payment will be bound by the release. Accordingly, the Court concludes that Hot Pizzas has not overreached with respect to the terms of the settlement.

**E.     Factor 5: Whether the Settlement is the Product of Arm's Length Negotiations Between Represented Parties Based on the Merits of the Case**

Prior to negotiations, Hot Pizzas produced voluminous payroll, delivery and reimbursement data, allowing the parties, their counsel, and their experts to evaluate the claims and calculate potential damages. The parties were only able achieve a settlement after a full day of contentious mediation with a well-respected and experienced mediator.

Both sides were well-represented by experienced counsel. Thus, the settlement is clearly the product of informed, arms-length negotiations.

**III.     THE NAMED PLAINTIFF'S INCENTIVE AWARD IS REASONABLE**

The Settlement Agreement provides for a reasonable incentive award to the Named Plaintiff. "[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Nen Thio*, 14 F. Supp. 3d at 1335 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)); *see also Rodriguez v. W. Publg. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases.") Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59; *see also Staton*, 327 F.3d at 979 (citing, with approval, *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (reasoning that since there can be no class action without a named plaintiff, service awards can be thought of as "nonlegal but essential case-specific expenses, . . . which are reimbursable")); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. Mar. 16, 2010) (reasoning that incentive awards to named plaintiffs "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits").

Factors bearing on the decision of whether to grant a service award include, as relevant here, the actions taken by the named plaintiff to protect the class's interests, the degree to which the class has benefited from those actions, and the amount of time and effort the named plaintiff expended on the litigation. *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, the record suggests that the Named Plaintiff substantially assisted counsel in achieving this settlement on behalf of all of the Opt-In Plaintiffs. He sought and retained counsel with experience in minimum wage/vehicle reimbursement claims and initiated this action. He provided ongoing guidance to counsel. He endeavored to protect the

- 7 -

1 interests of the Opt-In Plaintiffs and to obtain a substantial recovery on their behalf. He
2 participated throughout the day-long mediation and vigorously negotiated on behalf of all
3 239 Opt-In Plaintiffs. The other Opt-In Plaintiffs have substantially benefitted from his
4 efforts. For these reasons, the Court concludes that a modest incentive award is justified.
5 The award also falls well within the range of other incentive awards typically approved by
6 courts in this Circuit. *E.g.*, *Larson v. Desert Sun Pizza, LLC,* Case No. 3:16-cv-08011-
7 SRB (D. Ariz. Jan. 5, 2017) (Ex. 3); *Staton*, 327 F.3d at 977 (noting the Ninth Circuit's
8 previous approval of incentive awards of $5,000 to named plaintiffs and collecting other
9 cases); *Nen Thio*, 14 F. Supp. 3d at 1335 (approving $5,000 incentive awards to named
10 plaintiffs); *Selk*, 159 F. Supp. 3d at 1181 (same); *Harris v. Vector Mktg. Corp.*, C-08-5198
11 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (noting that a $5,000 incentive
12 award is "presumptively reasonable" and supported by ample case law, and granting the
13 named plaintiff a $12,500 award).

14 **IV.  PLAINTIFFS' COUNSELS' FEE RECOVERY IS REASONABLE**

15 The Settlement Agreement provides that Plaintiffs' counsel will recover their fees
16 from the Settlement Amount. As various courts have observed, the theory behind
17 attorneys' fee awards in class actions is that "a financial incentive is necessary to entice
18 capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote
19 their time to complex, time-consuming cases for which they may never be paid."
20 *Mashburn v. Natl. Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (cited, with
21 approval, in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989));
22 *see also Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 338-39 (1980) ("[T]he
23 financial incentive that class actions offer to the legal profession is a natural outgrowth of
24 the increasing reliance on the 'private attorney general' for the vindication of legal rights;
25 obviously this development has been facilitated by Rule 23 . . . Where it is not
26 economically feasible to obtain relief within the traditional framework of a multiplicity of
27 small individual suits for damages, persons may be without any effective redress unless
28 they employ the class action device . . . ."). The Supreme Court has "recognized

consistently that . . . a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). The Court also notes that the FLSA itself provides for fee-shifting to prevailing plaintiffs. 29 U.S.C. § 216(b).

The use of the percentage-of-fund method to calculate reasonable attorneys' fees is well-established in the Ninth Circuit. *E.g.*, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also In re Bluetooth Headset Products Liab. Litig.* ("*In re Bluetooth*"), 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) ("[I]t is well settled in the Ninth Circuit that a court has discretion to award either a percentage of the class fund or a lodestar award in a class fund attorney's fee[;] [however,] the "the primary basis of the fee award remains the percentage method." (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)).

This Circuit has applied the following factors, referred to as "the *Kerr* factors," in determining and/or cross-checking the ultimate reasonableness of an attorneys' fee award: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent[2]; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in

---

[2] This factor is no longer a valid benchmark. *In re Bluetooth*, 654 F.3d at 942 n.7.

- 9 -

1  similar cases." *In re Bluetooth*, 654 F.3d at 942 n.7 (quoting *Kerr v. Screen Extras Guild,*
2  *Inc.*, 526 F.2d 67, 69 (9th Cir. 1975) (citing *Johnson v. Georgia Highway Express*, 488
3  F.2d 714, 717-20 (5th Cir. 1974)), *abrogated on other grounds by City of Burlington v.*
4  *Dague*, 505 U.S. 557 (1992); *see, e.g.*, *Stetson v. Grissom*, 821 F.3d 1157, 1167 (9th Cir.
5  2016); *In re Bluetooth*, 654 F.3d at 944-45 (encouraging cross-checking and noting that
6  "[j]ust as the lodestar method can 'confirm that a percentage of recovery amount does not
7  award counsel an exorbitant hourly rate,' the percentage-of-recovery method can likewise
8  'be used to assure that counsel's fee does not dwarf class recovery'" (quoting *In re Gen.*
9  *Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 820 (3d Cir.
10 1995)).

      **A.**    ***Kerr* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.**

Minimum wage lawsuits based on under-reimbursed expenses were rare or non-existent before Plaintiffs' counsel's efforts on behalf of pizza delivery drivers. These cases provide significant and novel challenges, including favorable decisions on pleading, certification, and methods of proof. *See, e.g., Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim" and "[t]he present case does not involve a straightforward claim under the FLSA for unpaid amounts")). The same holds true in this case. In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiffs' attorneys, and "undesirability" of the case, *Kerr* factors (2), (3), (9) and (10) all strongly support the proposed fee.

      **B.**    ***Kerr* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.**

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *accord In re Bluetooth*, 654 F.3d at 942; *see also*

- 10 -

Fed. R. Civ. P. 23(h) advisory committee notes to 2003 amendments (explaining that "fundamental focus" in determining a common fund attorneys' fee award "is the result actually achieved for class members"). As noted above, given the novelty and difficulty of cases involving minimum wage laws vis-à-vis reimbursable expenses, Plaintiffs' recovery could have ranged anywhere from a sizable recovery to nothing at all. Thus, settlement represents a successful outcome for Plaintiffs. In addition, the percentage fee requested here is routine in common fund, contingent fee cases.

### C. *Kerr* Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.

The Ninth Circuit has recognized that calculation of the lodestar, which measures counsel's investment of time in the litigation, may provide a check on the reasonableness of the percentage award. *E.g.*, *In re Bluetooth*, 654 F.3d at 945. Here, Plaintiffs' counsel's fee award is consistent with the time invested in the case. Plaintiffs' counsel spent approximately 215 hours litigating this case with no assurance of any recovery at all. This includes time spent investigating the facts, preparing and filing pleadings, reviewing documents produced by the Named Plaintiff, the Opt-In Plaintiffs, and by Hot Pizzas, analyzing Hot Pizzas' payroll, delivery, and reimbursement data, communicating with the Named and Opt-In Plaintiffs, creating computerized damages models, researching and drafting a Mediation Statement, participating in the mediation, negotiating the terms of the settlement, drafting approval papers, and seeking Court approval of the settlement. This work naturally precluded counsel from pursuing other litigation opportunities.

The Settlement Agreement allows Plaintiffs' counsel to recover fees equal to one-third of the total Settlement Amount. By the time the settlement is administered, it is expected that the lodestar will closely approximate the requested fee. The Court also notes that Plaintiffs' counsel will be required to expend significant additional time administering the settlement distributing individual recoveries.

### D. *Kerr* Factor (12): Awards in Similar Cases.

Courts in this Circuit routinely recognize that as the size of the common fund recovery decreases, the percentage to which plaintiffs' counsel is entitled increases, and common funds under $10 million often result in awards between 30-50 percent. *See, e.g.*, *Craft*, 624 F. Supp. 2d at 1123-27 (noting Silber and Goodrich's conclusion "that a 33% fee award is both reasonable, and in line with the general market for contingent fee work" and that "[c]ases of under $10 Million will often result in result in fees above 25%," and awarding $6,375,000 in attorneys' fees (25% of the class fund) plus $70,564.64 in costs (collecting cases)); *Lopez v. Youngblood*, CV-F-07-0474 DLB, 2011 WL 10483569, at *12-14 (E.D. Cal. Sept. 2, 2011) (noting the same and awarding approximately 29% of the common fund as attorneys' fees for a $7 million recovery (collecting cases)); *Van Vranken v. A. Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) (noting that cases "in which high percentages such as 30–50 percent of the fund were awarded involved relatively smaller funds of less than $10 million," and awarding approximately $19 million in attorneys' fees, which was 25% of the common fund).

Indeed, this very Court recently approved the same percentage in another case involving the same claims. *See, e.g.*, *Larson v. Desert Sun Pizza, LLC,* Case No. 3:16-cv-08011-SRB (D. Ariz. Jan. 5, 2017) (Ex. 3). Because the common fund is well below the $10 million threshold and a 33% recovery is fair and commonplace in this Court for contingent fee work, the Court concludes that Plaintiffs' counsels' fee recovery in this case is reasonable and appropriate.

## V. PLAINTIFFS' COUNSELS' COST RECOVERY IS REASONABLE

The Settlement Agreement provides that costs advanced by Plaintiffs' counsel will also be paid out of the Settlement Amount. Plaintiffs' counsel incurred expenses in the course of this litigation with no assurance of recovery. Because expenses were incurred without any guarantee of reimbursement, Plaintiffs' counsel had a strong incentive to keep them reasonable. Moreover, the maximum amount of recoverable costs is capped in the Settlement Agreement, further assuring reasonableness.

The common fund doctrine "permit[s] the burden [of litigation expenses] to be shared among those who are benefited by the litigant's efforts." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). The doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Id.* (quoting *Van Gemert*, 444 U.S. at 478). Courts in this Circuit have routinely approved expenses incurred in the prosecution of complex cases. *See, e.g., In re Media Vision Tech. Securities Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (awarding, out of a common fund, reasonable costs for expert fees, investigator fees, photocopying, postage, telephone/fax expenses, travel, filing fees, and other various expenses); *Lopez v. Youngblood*, CV-F-07-0474 DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) (granting $2,000,000 in attorneys' fees plus $44,393.60 in costs, and noting that "[w]here there is a claims-made settlement, . . . the percentage of the fund approach in the Ninth Circuit is based on the total money available to class members, plus costs (including class administrative costs) and fees"); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (granting $6,375,000 in attorneys' fees plus $70,564.64 in costs from common fund). The Court concludes that Plaintiffs' counsels' recovery of costs from the Settlement Amount is appropriate in this case.

## VI.    CONCLUSION

The Court concludes that the settlement constitutes a fair and reasonable resolution of a bona fide FLSA dispute between the parties. Accordingly, and for the reasons set forth herein,

**IT IS HEREBY ORDERED** granting the Joint Motion for Approval of Settlement (Doc. 90).

**IT IS FURTHER ORDERED** approving the Parties' settlement (Doc. 91-1 McNab Declaration, Exhibit 1).

. . . .

. . . .

- 13 -

1   **IT IS FURTHER ORDERED** that this case is dismissed, on the merits, and with prejudice.

Dated this 9th day of June, 2017.

_____
Honorable John J. Tuchi
United States District Judge